IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-00340-CR-W-HFS |
| | ) | |
| TIMOTHY L. MATTHEWS | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant has filed a pro se motion for compassionate release (Doc. 416)[1], the Government has responded (Doc. 417), and defendant has filed a reply (Doc. 418). Thus, the matter is ripe and ready to be ruled. For reasons stated below the motion is denied.

On September 29, 2013, after pleading guilty to conspiracy to distribute 100 grams or more of a mixture or substance containing PCP, defendant was sentenced to a term of imprisonment of 120 months to be followed by supervised

---

[1] The motion appears to be composed by defendant, but was actually received from defendant's wife, Stefanie Matthews.

1

release for 8 years. (Doc. 180). Defendant is currently housed at FCC Forrest City-Low, and has a scheduled release date of May 19, 2021.

Defendant states that he has submitted requests for early release from the warden (without response), and claims that his medical conditions including bronchial asthma and Human Immunodeficiency Virus ("HIV") make him eligible for compassionate release. Defendant also claims that the prison in which he is incarcerated has experienced a high number of COVID-19 cases and conditions in the prison diminishes his ability to self-care.[2]

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, a defendant with extraordinary and compelling reasons may be entitled to compassionate release under 18 U.S.C. § 3582(c). The First Step Act of 2018 modified compassionate release under 18 U.S.C. § 3582 to state:

> [T]he court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

---

[2] Current BOP estimates are that 1,605 inmates have been tested and 649 tested positive for the virus. (https://www.bop.gov/coronavirus) assessed Sept. 29, 2020. There have been no reported deaths due to the virus. (Id).

imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that – (i) extraordinary and compelling reasons warrant such a reduction; or (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense of offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A). The movant bears the burden of proving he has satisfied the procedural prerequisites for judicial review and that extraordinary and compelling reasons justify a sentence reduction. *United States v. Dickerson*, No. 1:10-CR-17-HEA, 2020 WL 2841523, at *1 (E.D. Mo. June 1, 2020).

The Government does not dispute that defendant has exhausted administrative remedies, and states that it is sensitive to defendant's concerns, but argues that his medical conditions do not rise to the level constituting extraordinary and compelling reasons for early release.

U.S.S.G. § 1B1.13 provides that extraordinary and compelling reasons for a sentence reduction exists when, among other things, the defendant is suffering from a terminal illness or from a serious physical or medical condition that substantially diminishes the defendant's ability to provide self-care within the environment of the correctional facility in which he is confined and from which he is not expected to recover.

Recent medical records of the BOP submitted by defendant reveal that his HIV status has been known for approximately 20 years and was possibly sexually transmitted. (Doc. 416, pg. 12). However, defendant's condition has been and remains asymptomatic, and a medical exam conducted on February 11, 2020, found that defendant's skin, throat, cardiovascular, pulmonary, musculoskeletal, neurological, endocrine, and psychiatric functions were within normal limits. (Id. pgs, 12-13). While defendant continues to take medication for HIV, it appears to be controlled and there is no evidence of an HIV-related illness or an unstable CD4 cell count. Defendant also uses an albuterol inhaler for asthma, and recent pulmonary function was reported within normal limits. As such, defendant has failed to meet his burden of demonstrating that his medical conditions substantially diminish his ability to provide self-care within the facility in which he

is confined. United States v. Esmond, 2020 WL 4915669 *2 (D.N.J.);[3] see also, United States v. May, 2020 WL 3723253 *2 (E.D.Ky.)(defendant who is HIV asymptomatic and has never had an HIV-related illness fails to show he cannot provide self-care in prison); see also, United States v. Clayton, 2020 WL 5077741 *2 (S.D.Ga.)(defendant has not provided any evidence that he currently has a compromised immune system or suffers from any HIV-related symptoms).[4]

In his reply brief, defendant also complains that as of August 2020, the facility in which he is confined has been deemed a "hot spot" for contagion of the virus. The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Social distancing can be difficult for individuals living or working in a prison.

However, as of October 1, 2020, FCI Forrest City Low only has two inmates and 10 staff members with active COVID-19 cases. See COVID-19 Cases, Federal

---

[3] Citing other cases holding that an HIV diagnosis in and of itself does not establish compelling and extraordinary circumstance justifying release. United States v. Carter, 2020 WL 4194014 *2 (S.D.Ga.); United States v. Wright, 2020 WL 4227564 *1 (W.D.Va.); United States v. Roberts, 2020 WL 1700032 *1, 3 (S.D.N.Y.).
[4] It is noted that the compassionate release triage committee reviewed the pending motion on August 11, 2020, and the Federal Public Defender declined to enter in the case. (Doc. 417).

5

Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed October 1, 2020). As of that date, 651 inmates and 4 staff have recovered. Id. FCI Forrest City Low has made strides in trying to control the pandemic at the facility. United States v. Wesley, 2020 WL 5848897 *2 (D.Ks.)(recent statistics of cases at Forrest City Low FCI suggests to the court that the facility can and will properly treat defendant if he contacts COVID-19) ; United States v. McGlaughlin, 2020 WL 5872982 (C.D.Ill.); see also, United States v. Reames, 2020 WL 5250671 *4 (M.D.Tn.), where Chief Judge Crenshaw, Jr. opined that Forrest City-Low appears to have somewhat stemmed the tide because, while the BOP has reported that 664 inmates in Forrest City-Low tested positive for COVID-19 since the start of the pandemic, only three inmates and six staff members at that institution had active cases as of the end of August 2020. www.bop.gov/coronavirus/index.jsp.

Even if defendant presented evidence of a qualifying medical condition that constituted extraordinary and compelling reasons compassionate release would be denied based on consideration of the factors listed in 18 U.S.C. § 3553(a) – that being, that defendant remains a danger to others and the community. Defendant was charged in the underlying crime with 11 co-defendants in a drug trafficking organization that distributed phencyclidine ("PCP") throughout the Kansas City,

6

Missouri area. (Doc. 142, ¶¶ 6-20). Based on defendant's prior felony drug convictions, the Government filed an information to enhance the statutory range of punishment. (Doc. 106).[5] Defendant's criminal history, since the age of 17) reveals numerous offenses including drug trafficking, assaults, firearm possession, promoting prostitution (Doc. 142, ¶¶ 37-80).

It is noted that defendant's participation in various educational and financial courses while incarcerated is commendable (Doc. 416, Exhibits), and he is encouraged to continue improving his education. However, defendant's continuous and lengthy criminal history, much of it including violent offenses, results in a conclusion that defendant remains a danger to others and the community. Riley v. United States, 2020 WL 1819838 *9 (W.D.Wa.)(and defendant's anemic showing of efforts to educate himself and of familial support do not convince the court that he is no longer a danger to the community).

Accordingly, it is hereby

ORDERED that defendant's motion for compassionate release (Doc. 416) is DENIED.

---

[5] This regards the felony offense of distribution of crack cocaine in which defendant was sentenced to a term of imprisonment of 84 months by Judge Laughrey in Case No. 01-00378-01-CR-W-NKL. (Doc. 106).

s/ HOWARD F. SACHS

_____

**HOWARD F. SACHS**
UNITED STATES DISTRICT JUDGE

October 8, 2020

Kansas City, Missouri